UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TYRON DOUGLAS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | C.A. No. 10-11049-WGY |
| | ) | |
| BOSTON POLICE DEPARTMENT, THOMAS | ) | |
| HAYES, JOHN SHAUGHNESSY, DAVID | ) | |
| MALCOLM, PETER GARABEDIAN, DIEP | ) | |
| NGUYEN, BRIAN McMANUS, ADAM | ) | |
| MAMMONE, and WILLIAM FLORES, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.

On June 15, 2010, Plaintiff Tyron Douglas ("Douglas"), a prisoner in custody at the

Nashua Street Jail in Boston, Massachusetts, filed a *pro se* civil rights action under 42 U.S.C.

§ 1983 against the Boston Police Department and a number of its officers.  Douglas claims that

on April 16, 2010, he was subject to the use of excessive police force and police brutality,

resulting in personal injuries.  The incident occurred during the Defendants' attempts to arrest

him for suspected criminal activity (a street-level drug transaction).  Thereafter, Douglas was

charged by the state with various criminal offenses.  Douglas seeks monetary damages as well as

a dismissal of his state criminal charges.

Attached to Douglas's Complaint is a Motion for Funds for an Investigator to retrieve

video footage of the scene, a Motion for Discovery of Rules and Procedures of the Boston Police

Department, as well as a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), and a

Motion for Appointment of Counsel (Docket No. 3).

<u>DISCUSSION</u>

I.      <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

Upon review of Douglas's financial affidavit and his prison transaction account summary,  this Court finds that he has demonstrated sufficiently that he lacks funds to pay the $350.00 filing fee for this action.  Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED.

However, because Douglas is a prisoner, he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).  In light of this, it is hereby Ordered that:

1.      Plaintiff Douglas is assessed an initial partial filing fee of <u>$.67</u> pursuant to 28 U.S.C. § 1915(b)(1)(A);[1]

2.      The remainder of the fee, <u>$349.33</u>**,** is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

II.     <u>The Complaint is Subject to Screening</u>

Because Douglas is a prisoner, his Complaint is subject to the provisions of the Prison Litigation Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  <u>See</u> 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

---

[1]This assessment is based on a manual calculation from the figures contained in the prison account statement indicating the average monthly deposits over the roughly six-month period preceding the filing of the Complaint.  This assessment is made without prejudice to Douglas seeking reconsideration provided he submit an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  Additionally, § 1915A authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In reviewing this action, this Court liberally construes Douglas's Complaint because he is proceeding *pro se*.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972);  Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  Even under a broad view, however, this action is subject to dismissal for the reasons set forth below.

III.    The Boston Police Department is Not a Legal Entity Subject to Suit

It is unclear from the Complaint whether Douglas intended to name the Boston Police Department as a Defendant in this action.  He references seeking information regarding Boston Police Department rules, but does not set forth a separate cause of action against the Boston Police Department in the body of the Complaint.  In any event, Douglas's civil rights claims

against the Boston Police Department, to the extent there are any, are subject to dismissal in their

entirety because the Boston Police Department has no legal existence or liability to suit separate

from the City of Boston.  See Henschel v. Worcester Police Dept., Worcester, Mass., 445 F.2d

624, 624 (1st Cir. 1971) (holding a police department is not a suable entity, stating: "[i]f a Police

Department may be successfully sued, it is the city which will pay; the result is the same as suing

the city...."); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989) (The Boston Police

Department is not an independent legal entity; it is a department within the City of Boston.).

Accordingly, the Boston Police Department is not a proper party Defendant to this lawsuit.  See

Curran v. City of Boston, 777 F. Supp. 116, 120 (D. Mass. 1991).[2]

---

[2]Additionally, Douglas has failed to set forth any basis for a claim under Monell v.
Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978) (holding that
local governments (such as a municipality) could be held liable only when the constitutional
deprivation arises from a governmental custom that, even if not in writing, involves unlawful
practices by state officials that are so permanent and well settled as to constitute a "custom or
usage" with the force of law).  In order to prove a Monell civil rights claim under 42 U.S.C.
§ 1983 against the City of Boston, Douglas must show that: (1) the police officer defendants
were acting under color of law when they violated his constitutional rights; (2) the City of
Boston had an unconstitutional policy, custom or practice of failing to investigate, discipline or
supervise its officers; (3) this custom, policy, and practice was such that it demonstrated a
deliberate indifference to the rights of those citizens with whom its officers come into contact;
and (4) the custom, policy or practice was the moving force behind their violation of Douglas's
constitutional rights.  Id. at 690; Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005).
Moreover, the City of Boston may only be liable under § 1983 for a custom, policy or practice of
failing to discipline or supervise its officers if that failure "amounts to deliberate indifference to
the rights of persons with whom the [officers] come into contact."  DiRico v. City of Quincy,
404 F.3d 464, 468-469 (1st Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388
(1989)); Bordanaro v. McLeod, 871 F.2d 1151, 1159 (1st Cir. 1989).  Further, it is not sufficient
to allege that the City of Boston should have known that these officers were going to use
excessive force against him; rather, the actions of the City of Boston must be the "moving force
of the constitutional violation."  Polk County v. Dodson, 454 U.S. 312, 326 (1981).  There must
be an "affirmative link" between the custom or policy and the violation.  See City of Oklahoma
City v. Tuttle, 471 U.S. 808, 823 (1985).  The challenged policy decision must be one that made
the ultimate violation "'almost bound to happen, sooner or later', rather then merely 'likely to
happen in the long run.'"  Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987).  Douglas

IV.     No *Respondeat Superior* Liability

As an additional matter, to the extent that Douglas is seeking to hold the Boston Police

Department liable for alleged violations of civil rights based on actions of its police officers, his

claims are not legally cognizable because *respondeat superior* is not a viable theory of liability

under 42 U.S.C. § 1983 (the vehicle for asserting constitutional violations by state actors).  "It is

well-established that 'only those individuals who participated in the conduct that deprived the

plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437

F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.

2005)).  "[In civil rights actions],'supervisors are not automatically liable for the misconduct of

those under their command.  A plaintiff must show an affirmative link between the subordinate

[employee] and the supervisor, whether through direct participation or through conduct that

amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting

Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  See Pinto v. Nettleship, 737 F.2d 130,

132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in

the deprivation of constitutional rights).  See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir.

2008) (discussing test for liability of supervisory officials).

Here, Douglas has not set forth any factual basis for direct liability of the Boston Police

Department.  Accordingly, for the reasons set forth above, to the extent Douglas is suing the

Boston Police Department for civil rights violations, his claims are subject to dismissal pursuant

to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

---

does not allege any facts from which this Court could reasonably infer a Monell claim has been
presented in the Complaint.

V.    <u>Abstention as Bar to Claims for Interference with State Criminal Proceedings;
      Lack of Mandamus Jurisdiction</u>

As part of the relief sought, Douglas seeks dismissal of his state criminal charges and

funds for discovery related to his criminal prosecution.  This Court will not grant the relief

requested because these requests clearly seek to have this Court interfere with an ongoing state

criminal prosecution.  Principles of abstention permit this Court to decline exercising jurisdiction

over the claims that would result in this Court's intervention in the ongoing state proceedings.  In

<u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court reiterated "the fundamental policy

against federal interference with state criminal prosecutions."  <u>Id.</u> at 46.  This doctrine of

abstention "is based on principles of comity, and unless there are extraordinary circumstances, it

instructs federal courts not to 'interfere with ongoing state-court litigation.'"  <u>Rossi v. Gemma</u>,

489 F.3d 26, 34 (1st Cir. 2007) (quoting <u>Maymó-Meléndez v. Álvarez-Ramírez</u>, 364 F.3d 27, 31

(1st Cir. 2004)).  <u>Younger</u> abstention extends to civil cases where the requested relief would (1)

interfere with ongoing state judicial proceedings; (2) that implicate an important state interest;

and (3) that provide an adequate opportunity for the federal plaintiff to advance his federal claim.

<u>Id.</u> at 34-35.

Here, it is clear that this Court cannot dismiss the state criminal charges against Douglas,

nor does this Court have mandamus power to order a state court judge to dismiss those criminal

charges.  To the extent Douglas seeks a writ of mandamus ordering a state court judge to revise

her sentences and record of conviction, this court lacks mandamus jurisdiction to do so.

Section 1361 of title 28 provides that:

> [t]he district courts shall have original jurisdiction of any action in the nature of
> mandamus to compel an officer or employee of the United States or any agency thereof
> to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.

A state court judge is not a federal officer, employee or agency and, as such, is not subject to the statutory mandamus authority of this Court.  See Burnett v. Superior Court of Marin County, 573 F. Supp. 345 (D.C. Cal.1983) (district court lacks jurisdiction to compel state court to perform its alleged duty).  Thus, to the extent that Douglas seeks an Order dismissing his state criminal charges or compelling a state court judge to do so, the request is DENIED.

Finally, this Court cannot find that Douglas is unable to pursue his arguments (for dismissal of the state criminal charges or for funds for investigation) with the state courts.  He presents no basis for finding that exceptional circumstances exist to circumvent application of Younger abstention.  Accordingly, Douglas's Motion for Funds for an Investigator to retrieve video footage of the scene is DENIED without prejudice.

VI.      Motion for Discovery of Rules and Procedures of the Boston Police Department

In light of the above discussion regarding the failure to state a claim against the Boston Police Department, and because Douglas's request is premature at this time, the Court DENIES his Motion for Discovery of Rules and Procedures of the Boston Police Department without prejudice to renew upon good cause shown and in accordance with this Court's Local Rules regarding motion practice, if he is unable to obtain the necessary discovery through the discovery rules of this Court if this action is permitted to proceed further.

VII.     Plaintiff's Civil Rights Claims are Not Ripe; Application of *Wallace v. Kato*

It is well settled that a civil rights claim under 42 U.S.C. § 1983 that relates to a criminal prosecution and/or to the unlawfulness of confinement, does not accrue unless the prisoner has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action or condition of confinement.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Under the so-called "Favorable Termination Rule" of Heck:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. (emphasis added; footnote omitted).  Without such a showing of a favorable termination, a prisoner's cause of action under § 1983 has not yet accrued.  Id. at 489.  Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) --  no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).   In other words, under Heck and its progeny, a claim under § 1983 that would necessarily imply the invalidity of the states' deprivation, punishment or duration of confinement may not be brought unless and until the condition is reversed.  If success under a § 1983 claim would either directly or indirectly result in speedier release, which properly lies at "the core of habeas corpus," it cannot be brought under 42 U.S.C. § 1983.  Id. at 82 (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).

More recently, the case of Wallace v. Kato, 549 U.S. 384 (2007), refined the application of the Favorable Termination Rule, impacting its application to pretrial detainees.  Wallace dealt with the issue of when the statute of limitations for a § 1983 claim begins to run.  The plaintiff, a state

prisoner seeking to avoid a ruling that his false arrest action under § 1983 was time barred, argued that Heck's Favorable Termination Rule compelled the conclusion that his cause of action could not accrue until the state dropped its charges against him.  Id. at 387-388.  However, the United States Supreme Court held that the statute of limitations on a § 1983 claim begins to run at the time legal process is initiated.  Id. at 391.

The Court recognized, however, that combining this holding with Heck's Favorable Termination Rule would seemingly result in the conclusion that, in situations where a prisoner is being held pursuant to legal process but prior to conviction (hence no possibility of favorable termination), suit could not be brought even though the statute of limitations had started to run.  To reconcile Wallace and Heck, the Court concluded that if a plaintiff files a claim related to rulings that *will likely be made* in a pending or anticipated criminal trial, a district court may stay the civil action until the criminal case (or likelihood of criminal case) has ended.   Id. at 393-394; Crooker v. Burns, 544 F. Supp. 2d 59, 64-65 (D. Mass. 2008).  By staying the action, the court avoids having to guess whether a ruling in the civil suit would impugn or imply the invalidity of a future conviction, which would require dismissal under Heck.

Wallace makes clear that Heck does not act to bar § 1983 claims for acts that occurred prior to the initiation of legal process, such as claims of false arrest or false imprisonment.  Correspondingly, Wallace stands for the proposition that the Heck bar does apply after the institution of legal process when damages are sought for confinement due to that legal process.  See Wallace, 549 U.S. at 393 ("We assume that ... the Heck principle would be applied [to]... the date petitioner became held pursuant to legal process ").

Here, Douglas's custodial status is not entirely clear; however, the Court presumes he is a pretrial detainee under these circumstances, and therefore the <u>Heck</u> bar would not appear to apply to this action for the excessive use of force, although, if convicted, it could be.  <u>See, e.g.</u>, <u>Sappington v. Bartee</u>, 195 F.3d 234, 236-37 (5th Cir. 1999) (where plaintiff was convicted of aggravated assault on an officer, plaintiff's § 1983 claim for use of excessive force in the same confrontation would necessarily imply the invalidity of the plaintiff's conviction; "his claim is necessarily inconsistent with his criminal conviction").

Applying <u>Wallace</u> to the instant case, it appears at this stage in the proceedings that Douglas's claims for money damages, while not technically barred by the Favorable Termination Rule of <u>Heck</u>, nevertheless are not ripe for review because his claims *may be related to rulings that will likely be made* in the pending state criminal trial.  Thus, his claims would not be ripe until <u>after</u> the completion of his criminal prosecution and an invalidation of a conviction.  Regardless of whether a court is staying the civil case or strictly applying the Favorable Termination Rule, the critical issue here is <u>whether a ruling in this civil case would impugn a future or current criminal conviction</u>.  Under  <u>Wallace</u>, this Court could stay (or administratively dismiss without prejudice to reopen) after completion of the state criminal proceedings.  <u>Wallace</u>, 549 U.S. at 393-394 ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").  This matter would be resolved based not on <u>Heck</u>, but on application of principles of abstention:

> <u>Heck</u> does not address the availability of § 1983 absent a state criminal conviction. Although some courts have relied on <u>Heck</u> and its logic to dismiss such suits, ... the better way to view such suits is not as a <u>Heck</u> issue but rather as the <u>Younger</u> issue raised in <u>Tower v. Glover</u> [, 467 U.S. 914 (1984)] but never authoritatively resolved by the Court.  The Court in <u>Heck</u> seems to have contemplated the application of

abstention principles to pre-conviction challenges to aspects of the state criminal process.

Steven H. Steinglass, 2 Section 1983 Litigation in State Courts § 18:18 (Oct. 2009) (footnotes omitted; brackets added).

Notwithstanding the above discussion, this Court will not, *sua sponte*, dismiss this action but will permit this case to proceed at this time with respect to the excessive force claims against the individual Defendants only, and will direct the Clerk to issue summonses as to those Defendants. The Defendants may brief the issues discussed in this Memorandum and Order and raise the Heck/Wallace issues if appropriate, seek a stay of this action (or administrative dismissal) pending resolution of the state criminal case, or present any other appropriate request for relief.

VIII.   Order to Show Cause and for Issuance of Summonses as to the Individual Defendants

The Court directs that within 42 days of the date of this Memorandum and Order, Douglas shall demonstrate good cause in writing why the claims against the Boston Police Department should not be dismissed in their entirety.  Any show cause response shall not exceed five (5) double-spaced pages.  Failure to comply with the directive to demonstrate good cause will result in a dismissal of the claims against the Boston Police Department.

With respect to the individual Defendants, the Clerk shall issue summonses and the United States Marshal is directed to effect service as directed by Douglas, as set forth below.

IX.   The Motion for Appointment of Counsel

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).[3]   However, a civil plaintiff lacks a constitutional right to free counsel.  <u>Desrosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  <u>Id.</u>  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  <u>Id.</u> at 24.

The Court credits that Douglas is unable to afford his own counsel, and that he may have difficulties prosecuting his claims as a *pro se* prisoner.  Nevertheless, at this juncture this Court cannot find that exceptional circumstances exist warranting appointment of *pro bono* counsel in this case, particularly where this action may not be ripe for review at this time.  On the balance, this case does not warrant the expenditure of scarce *pro bono* resources at this time.

Accordingly, Douglas's Motion for Appointment of Counsel (Docket No. 3) is DENIED without prejudice to renew after the Defendants have filed a response to the Complaint and upon good cause shown.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

---

[3]In this District, there is no Plan authorizing the payment for counsel appointed for civil litigants such as the Plaintiff. Any appointment of counsel would therefore be contingent upon the availability of *pro bono* counsel to accept voluntarily an appointment. *cf.* 18 U.S.C. § 3006A (providing for appointment of counsel in habeas petitions under 28 U.S.C. § 2241, § 2254 and motions under § 2255 and for payment under the Criminal Justice Act).

1.      Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.      Plaintiff's request for an Order dismissing his state criminal charges or compelling a state court judge to do so is DENIED;

3.      Plaintiff's Motion for Funds for an Investigator in retrieving video footage of the scene is DENIED;

4.      Plaintiff's Motion for Discovery of Rules and Procedures of the Boston Police Department is DENIED;

5.      Plaintiff's Motion for Appointment of Counsel (Docket No. 3) is DENIED;

6.      Within 42 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why his claims against the Boston Police Department should not be dismissed in their entirety;

7.      The Clerk shall issue summonses as to the individual Defendants only (i.e., Thomas Hayes, John Shaughnessy, David Malcolm, Peter Garabedian, Diep Nguyen, Brian McManus, Adam Mammone, and William Flores); and

8.      The Clerk shall send the summonses, Complaint, and this Order to the Plaintiff, who must thereafter serve the Defendants in accordance with Federal Rule of Civil Procedure 4(m).  The Plaintiff may elect to have service made by the United States Marshal.  If directed by the Plaintiff to do so, the United States Marshal shall serve the summons(es), Complaint, and this Order upon each Defendant, in the manner directed by the Plaintiff, with all costs of service to be advanced by the United States. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the Plaintiff shall have 120 days from the date of this Order to complete service.


SO ORDERED.

/s/ William G. Young
UNITED STATES DISTRICT JUDGE


DATED: July 1, 2010